HATTIE HERON *vs.* A. FRANK WEBBER & Trustee.

Kennebec. Opinion November 16, 1907.

*Assumpsit. Express Contracts. Actions. Board. Boarder. Table Board.*

Where a plaintiff in an action on an alleged express contract to pay room rent, recovers a verdict and it appears that the action arose in temper and not in contract, the verdict will be set aside.

Where a plaintiff alleges that the defendant made an express contract to pay room rent and it appears that no charge for room rent would have been made if harmonious relations between the plaintiff and the defendant had continued, such alleged contract will be closely scrutinized as claims of this kind are not viewed with favor by the court.

The word board in the ordinary acceptation of the term, covers both room rent and table board. A boarder is ordinarily one who has food and lodging in another's house or family for a stipulated price. If it has the narrower meaning, it is usually designated table board.

On motion and exceptions by defendant. Motion sustained. Exceptions not. considered.

Assumpsit upon an account annexed to recover for 156 weeks' room rent at $1.50 per week, brought in the Superior Court, Kennebec County. Plea, the general issue. Tried at the November term, 1906, of said Superior Court. Verdict for plaintiff for $116.51. The defendant took exceptions to the refusal of the presiding Justice to give certain requested rulings, and also filed a general motion for a new trial.

The plaintiff based her action upon an alleged express contract made between her and the defendant April 4, 1904, whereby, as she alleged, the defendant agreed to pay her $5.50 per week for board and room rent from that date.

The case fully appears in the opinion.

*C. W. Hussey*, for plaintiff.

*Harvey D. Eaton*, for defendant.

Sitting: Emery, C. J., Whitehouse, Strout, Peabody, Cornish, King, JJ.

Cornish, J. This was an action of assumpsit upon an account annexed for 156 weeks' room rent at $1.50 per week, amounting to $234. The case comes to the Law Court on motion and exceptions by the defendant.

We think the motion should be sustained.

The plaintiff bases her action upon an alleged express contract made between the parties on April 4, 1904, whereby the defendant agreed to pay the plaintiff $5.50 per week for board and room rent from that date. She admits that he has regularly paid her the sum of $3.50 per week, but she claims that that sum covered simply the table board, and that the room rent at $2.00 per week for two years and two months, remains unpaid.

The plaintiff is mother-in-law of the defendant. The defendant boarded with the plaintiff for a few months prior to his marriage to her daughter, which occurred in April, 1901, and after their marriage, the defendant and his wife remained in the plaintiff's boarding house under an agreement by which the defendant was to pay $3.50 per week. Apparently no charge was ever made for

the wife's board and this sum of $3.50 included both board and room rent for the husband.

The defendant paid the agreed price regularly from April, 1901 to April, 1904, and no claim is made for any balance due for room rent for that period. On April 4, 1904, a boarder vacated a room on the ground floor and the plaintiff claims that the defendant promised that if he could have the vacated room he would pay the same price as the other boarder, $5.50 per week. The defendant admits that he and his wife changed their room but denies any agreement for increase in price. The evidence overwhelmingly sustains the defendant's contention. The testimony of the plaintiff is both unsatisfactory and unreliable. Her bill as sued is for 156 weeks' room rent at $1.50 per week, while her claim as testified to by her is for 112 weeks at $2.00 per week. At the beginning of the trial, she fixed the date of the new contract as the 4th of April, 1904, because she said, she "had it down in black and white" in her ledger, on which she claimed were also entered dates when the defendant came and left, and nearly all the payments made by him; but when the book was afterwards produced at defendant's request, it contained no running account with the defendant, no charge for room rent, no date of coming or leaving, nothing whatever to substantiate her account as sued, but simply a few memoranda of payments made by the defendant at different times "for board." It was so meagre that she herself denied that earlier in the trial she had said she could prove the date by her book.

On the other hand, the defendant not only denies the making of any contract for an increase from $3.50 to $5.50 per week, but he produced twelve receipts given by the plaintiff to the defendant at various times between January 16, 1905, and May 16, 1906, and all within the time covered by the writ. Some of these are "for board in full to date," while those of January 16, 1905 and April 8, 1905, are "in full to date." This last one was given one year after this alleged new contract was made, and yet it is admitted that during all that time, the defendant had paid the same price of $3.50 per week, the plaintiff had accepted it and had given these receipts in full. Moreover, the other receipts, coming down to the

last one of May 16, 1906, which was immediately prior to the defendant's leaving, have substantially the same effect. They are "in full for board to date," and it is too strained a construction to hold that these were intended to include merely table board and that a balance of $2.00 per week for room rent was all the time accumulating against the defendant. The word board in the ordinary acceptation of the term, covers both room rent and table board. A boarder is ordinarily one who has food and lodging in another's house or family for a stipulated price. If it has the narrower meaning, it is usually designated table board. In fact the plaintiff herself, when off her guard, employed the term in the same sense for she spoke of the defendant as boarding with her for $3.50 per week prior to April, 1904, and at that time she made no separate charge or claim for room rent.

Significant too, is the fact that during the two years covered by the writ, the defendant paid exactly $3.50 per week, and the plaintiff admits that her claim for table board was settled as it went along. Board, including both meals and room rent, was fixed at a given sum. There was no separation into $3.50 for meals and $2.00 for room rent. Previously $3.50 had covered both, and the plaintiff's testimony is that the defendant when he moved, agreed to pay the same as the party who had moved out, namely, $5.50 per week. There is no pretense that the previous occupant was paying one sum for meals and another for room, but one lump sum for both.

The fact that the payments made by the defendant were not irregular in amount, some weeks three dollars and other weeks four dollars on account, but were all at the regular rate of $3.50 per week and that the plaintiff receipted for them as she did, is also strong and convincing proof of the groundlessness of the plaintiff's claim. In short, the conduct of the parties at the time is entirely inconsistent with the plaintiff's present contention.

The jury must have taken something of the same view for she was entitled to either the full amount of $224, or nothing, and yet the verdict was for $116.51.

The explanation of this action is simple. It arose in temper and not in contract. There was trouble in the family. The defendant

and his wife quarrelled, and the defendant left in June, 1906.   This suit was brought July 2, 1906, and divorce proceedings followed.

This is one of those cases where if harmonious relations had continued, no such charge as is here claimed would have been made. Such claims, in the case of implied contracts, are not viewed with favor by this court.  *LaFontain* v. *Hayhurst*, 89 Maine, 388; *Clary* v. *Clary*, 93 Maine, 220.   Express contracts of a similar nature should be as closely scrutinized.   It was clearly not in the contemplation of the parties in the case at bar that the defendant should pay a separate sum of $2.00 per week for room rent in addition to the $3.50 per week for board.   The family quarrel suggested the possibility of creating and enforcing the claim, but the evidence falls so far short of maintaining it and the verdict is so manifestly wrong that it should not be allowed to stand.

The conclusion of the court upon the motion renders consideration of the exceptions unnecessary.

*Motion sustained.*